UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LORI CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-01305-SEB-TAB |
| | ) | |
| KOHL'S DEPARTMENT STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant's Motion for Summary Judgment [Docket No. 38], filed on April 11, 2011, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Lori Clark, brings this claim against her former employer, Defendant, Kohl's Department Stores, Inc. ("Kohl's"), for her allegedly discriminatory termination based on her race (African-American), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and under 42 U.S.C. § 1981[1].

---

[1] In her Complaint, Clark also alleged that Kohl's retaliated against her for taking medical leave, in violation of the Family and Medical Leave Act of 1993, 29 C.F.R. § 825 (Count IV). However, Clark voluntarily abandoned that claim before Kohl's filed the instant Motion for Summary Judgment. Clark Dep. p.241, Feb. 18, 2011. Therefore, we do not address that claim here.

For the reasons set forth in detail below, Kohl's Motion for Summary Judgment on this claim is <u>DENIED</u>.

Clark failed to respond to the motion regarding her claims for discriminatory transfer (Count II) and retaliatory termination (Count III) under 42 U.S.C. §1981 and thus is deemed to have waived them. Accordingly, we <u>GRANT</u> Kohl's Motion for Summary Judgment with regard to these two counts. We address Count I below.

**Factual Background**

Kohl's Department Store hired Lori Clark as an assistant store manager at its Geist location northeast of Indianapolis on February 04, 1991. During her career, Clark managed four Indiana stores: Geist, Noblesville, Plainfield and Westfield. While at the Geist location, Clark was promoted to store manager on July 01, 1999 and was responsible for store performance. Her personnel appraisal was based on the following criteria:

1. Core values (accounts for 25% of the total performance points and is referred to as "Manager's Overall Total Score"): (a) Results-oriented, (b) Builds teams & partnerships, (c) Prepared & focused, (d) Takes an informed approach, (e) Develops self & others, and (f) Acts with integrity. Hudson Aff. ¶ 4, Feb. 28, 2011.

2

> 2. Year-end final score and rank (accounts for 75% of the overall score and collectively is referred to as the "Executive Scorecard"): (a) Sales (20%), (b) Customer Service (15%), (c) Credit Solicitation (10%), (d) Shortage (inventory) (10%), (e) Payroll (10%), and (f) Executive turnover (10%). Id.

The scores, taken together, are referred to as "Total Performance Points." Kohl's employees receive annual performance evaluations, which are used to help identify low performers and to provide written counseling, as needed. Id. at ¶ 5. Clark was transferred from Geist to the Noblesville location in April 2003 as store manager. Clark Dep. p. 71, Feb. 18, 2011. From Noblesville, Clark was transferred to the Plainfield, IN store on May 02, 2005. During Clark's tenure as Plainfield store manager, two associates complained of discriminatory comments made to them by a co-worker. Id. at pp. 88-89. Though Clark counseled the offending employee, she did not follow up with the documentation requested by Elisa Hudson, Kohl's Human Resources Manager, to complete the complaint process with Kohl's human resources office. Id. at p. 90; Hudson Aff. ¶ 40. Therefore, no formal action was ever taken to address the concerns that had been raised regarding the alleged discriminatory behavior. Hudson Aff. ¶ 40. In 2009, all Kohl's stores introduced diversity training for its employees. Id.

During Clark's tenure at the Plainfield store, according to Kohl's, she did not meet "Kohl's expectations." Id. at ¶ 9. Instead of placing her on formal written counseling, Kohl's transferred Clark to the Westfield, IN store on October 09, 2006. Id. at ¶ 10.

Kohl's asserts that the primary reason for its forebearance was Clark's longevity with the store. Id. at ¶ 11. During this timeframe, Clark also acted as a "certified district trainer." Clark Dep. p. 96. Clark's total performance scores either met or exceeded expectations throughout this and the subsequent time period, through January 2008. Jones Dep. pp.49-50, Mar. 4, 2011; Jones Dep. Ex. 8.b.-16. While at the Westfield store, she was evaluated by the district manager, Dennis Jones, and in April 2008, she received her performance review, scoring a total of 14 points for "Core Values" and 52 points for her performance rating. A score of thirteen was considered to "meet... expectations." Jones Dep. p. 46; Clark Aff. ¶ 27, Mar. 25, 2011. The district manager discounted Clark's "objective" score by two points (negative two) in his report. Jones noted in his assessment that Clark was a "low performer." Clark Dep. Ex. BB. In contrast, during the previous year, the district manager, Lisa Andersen, had added three "visit" points to Clark's score; Clark thus met expectations with a score of 58. Clark Dep. Ex. AA. Even though Clark's performance rating for April 2008 was at the "meets expectations" level, she was placed on remediation. Formal written counseling was initiated on April 11, 2008, followed by 30, 60, and 90-day reviews. Hudson Aff. Exs. H-8, H-9, H-10. Kohl's alleges that despite written warnings Clark did not demonstrate the improvement necessary to fully meet its standards. Hudson Aff. ¶¶ 14-21. Clark responds that during the time that she was on formal written counseling her store's ranking improved 371 positions, having begun with a score of 907 (929 being the lowest possible ranking) and ending nine months later at 536. Jones Dep. pp. 49-50; Dep. Exs. 8.b.-16.

4

Clark was employed at Kohl's for a total of eighteen (18) years until her termination on January 27, 2009. Clark Complaint, ¶ 3 and ¶ 5. During that time, her total performance points never fell below "meets expectations." She subsequently filed a charge of a wrongful termination based on her race with the Equal Employment Opportunity Commission (EEOC), and the EEOC issued a right to sue letter on October 14, 2009. This lawsuit ensued.

## Legal Analysis

### I. Statute of Limitations

Unless otherwise provided by a specific statute, a civil action arising under federal law is subject to a four-year statute of limitations, based on 28 U.S.C. § 1658. Because 42 U.S.C. § 1981, which is the statutory basis of Clark's claim, contains no specific statute of limitations, we import the general four-year limitation period. Jones v. R.R. Donnelley & Sons Company, 541 U.S. 369, 382 (2004); Khan v. Eli Lilly and Co., 2008 WL833203 (S.D. Ind. 2008) ("claims brought under 1981 are governed by the four-year statute of limitations in 28 U.S.C. § 1658 . . ."). Here, except for Clark's transfer from the Plainfield store to the Westfield store, all other transfers occurred prior to the four (4) year period preceding the filing of this action. The Court agrees with Kohl's that actions prior to this date cannot be pursued under § 1981. 28 U.S.C. § 1658. Clark filed her

5

Complaint on October 21, 2009; therefore, only her transfers occurring after October 21, 2005 come within the applicable statute of limitation. Though we have traced in this entry Clark's employment history with Kohl's occurring prior to October 21, 2005, our legal analysis of her claim is limited only to the time and actions occurring thereafter.

**II.    Summary Judgment**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. Id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," Id., at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325; Doe v. R.R. Donnelley & Sons, Co., 42 F.3d 439, 443 (7th Cir. 1994).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). The record and all reasonable inferences that may be drawn from it are viewed in a light most favorable to the party opposing the motion. Anderson, 477 U.S. at 247-52. Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

The summary judgment standard is applied rigorously in employment

discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. Seener v. Northcentral Technical Coll., 113 F.3d 750, 757 (7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997).

**III. Discussion**

Clark alleges that she was terminated because of her race, in violation of Title VII and 42 U.S.C. §1981. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination under Title VII either with direct evidence of discrimination or indirectly through the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Scaife v. Cook County, 446 F.3d 735, 739 (7th Cir. 2006). The parties here have addressed both the direct and indirect methods in their submissions, so

8

we follow their lead and discuss below both avenues of proof.

Typically, the direct method of proof is used when there is an admission of discriminatory animus by the employer. Phelan v. Cook County, 463 F.3d 773, 779 (7th Cir. 2006). There has been no such admission by Kohl's here. Kohl's asserts that it terminated Clark, an at-will employee, for her failure to meet performance expectations. Hudson Aff. ¶¶ 9-25; Jones Aff. ¶¶ 14-17; Jones Aff. Exs. J-1, J-2, J-3, J-4, and J-5. Despite the absence of direct evidence to support a claim of discrimination, the Seventh Circuit recognizes that "[a] plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 504 (7th Cir. 2004) (quoting Troupe v. May Dep't Stores Co., 20 F.3d 734, 737 (7th Cir. 1994)). To defeat summary judgment based on this method, "'all that is required is evidence from which a rational trier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class.'" Phelan, 463 F.3d at 780 (quoting Troupe, 20 F.3d at 736). "That circumstantial evidence, however, 'must point directly to a discriminatory reason for the employer's action.'" Cerutti v. BASF Corp., 349 F.3d 1055, 1061 (7th Cir. 2003) (quoting Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003)).

The Seventh Circuit has identified three means by which a plaintiff can possibly survive summary judgment using circumstantial evidence under the direct method. These means include,

> "Suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *. . . Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment.* And third is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the [identifying] characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." Hossack v. Floor Covering Associates of Joliet, Inc., 492 F.3d 853, 862 (7th Cir. 2007) (quoting Troupe, 20 F.3d at 736). *Emphasis added.*

Clark has pursued the second avenue by adducing direct evidence of discrimination through a comparison of herself with a similarly-situated Caucasian colleague, Barb Norrick, whom Clark maintains received systematically better treatment from Kohl's. Formal written counseling is comprised of a ninety (90) day review period during which the manager's personal performance and store performance is evaluated. According to Kohl's store policy, if the manager meets Kohl's performance expectations, then he or she is removed from the progressive counseling process. The manager is then instructed to maintain consistent job performance; failure to do so, according to Kohl's, will result in immediate disciplinary action, including termination. Hudson Aff. ¶ 5. If the manager does not improve to a level of meeting Kohl's performance expectations, the manager is

terminated.  Id.  Kohl's describes the personnel appraisal process as having two components: one is based on "personal" characteristics of the store manager's performance and the second reflects an objective assessment of the store's performance.  Id. at ¶ 4.  Simply stated, a subjective component accounts for one-quarter of the total score, while objective criteria form the remaining three-quarters of the score.

Clark presents performance data, *infra*, to show that her objective performance improved over time, even though in April 2008 her performance data was comparable to Norrick's.  At that time, both store managers were deemed to have performed poorly, although both scored "meets expectations" on their appraisal.  According to both parties, the Westfield store's monthly recaps for 2008 of the then year-to-date rankings of 929 stores showed an increase in performance from the *bottom two percent* of all stores to the *middle third,* rising 371 store positions (see Table One below).

*Table One: 2008 Comparison of Westfield Store Rankings when Managed by Plaintiff Clark with Noblesville Store Rankings Managed by Norrick while Clark Had Been Placed Under Formal Written Counseling*

| Date | (Clark) Westfield Rank (out of 929) | (Norrick) Noblesville Rank (out of 929) |
|---|---|---|
| March 2008[2] | 907 | 894 |
| April 2008[3] | 844 | 860 |
| May 2008[4] | 799 | 873 |
| June 2008[5] | 806 | 897 |
| July 2008[6] | 777 | 899 |
| August 2008[7] | 801 | 913 |
| September 2008[8] | 539 | 860 |
| October 2008[9] | 606 | 919 |
| November 2008[10] | 536 | *not available* |

Only in March 2008 did Norrick's store out-perform Clark's. During this same

---

[2] Jones Dep. pp.49-50 (discussing Ex. 8.b.)

[3] Jones Dep. pp.49-50 (discussing Ex. 9.c.)

[4] Jones Dep. pp.49-50 (discussing Ex. 10.d.)

[5] Jones Dep. pp.49-50 (discussing Ex. 11.)

[6] Jones Dep. pp.49-50 (discussing Ex. 12.f.)

[7] Jones Dep. pp.49-50 (discussing Ex.13.g.)

[8] Jones Dep. pp.49-50 (discussing Ex. 14.)

[9] Jones Dep. pp.49-50 (discussing Ex. 15.i.)

[10] Jones Dep. pp.49-50 (discussing Ex. 16.)

period, there was a single-point difference in the subjective component of the appraisals between the two managers, but Norrick was not placed on a formal written improvement plan and Clark was. In April 2008, Clark's performance appraisal earned her a score of 14 points for "Core Values" and 52 points for her overall performance rating. (A score of thirteen is considered "meets expectations.") Jones Dep. p. 46; Clark Aff. ¶ 27. Norrick received a "Core Values" score of 15 with 53 points for her performance rating. Kohl's stipulates that if a manager's "Performance Points" are low, then the manager is typically placed on formal written counseling. Hudson Aff. ¶ 5. While at the Westfield store, both Clark and Norrick were evaluated by the same district manager, Dennis Jones.

Similarly, the Noblesville store, under Norrick's leadership, failed to meet its operational goals, scoring 73 percent, compared to Clark's Westfield score of 80, as of July 2, 2008. Jones Dep. p. 92. The Westfield store achieved its goal regarding operational assessment, which measures how well a store is following company guidelines. The range of scores in the district during that time period ran from a high of 86 (in Muncie) to a low of 67 (at the Fort Wayne West store). Jones Dep. p. 92.

Managers Clark and Norrick also had comparable tenures with Kohl's. As of the date of her termination, Clark had been employed by Defendant in excess of seventeen years; Norrick had been employed for twelve years. Both had been store managers more than nine years, though their respective current assignments were for shorter periods of time: Clark was at Westfield approximately 2 years; Norrick was at Noblesville

approximately 1½ years.

As previously noted, Kohl's asserts that it terminated Clark, an at-will employee, for her failure to meet performance expectations. Hudson Aff. ¶¶ 9-25; Jones Aff. ¶¶ 14-17 and Exs. J-1, J-2, J-3, J-4, and J-5. In support of this argument, Kohl's proffers that the Westfield store's performance declined during Clark's tenure as manager. Jones Aff., ¶¶ 4-6. Additionally, Kohl's offers evidence to show that portions of Clark's performance review did not meet expectations, especially with regard to building teams and partnerships (Jones Aff. ¶ 14 and Ex. J-5) and developing self and others (Jones Aff. ¶ 14 and Ex. J-5).

However, the evidence adduced by Plaintiff creates a trail of facts which demonstrate substantial comparability between the two store managers, Clark and Norrick, (i.e., store location, employee tenure and performance), but substantial differences in the treatment they each received from Kohl's supervisors. Admittedly, there are variances in the data as well, but such discrepancies must be resolved by the ultimate trier of fact, rather than the Court on summary judgment. The evidence, viewed in a light most favorable to the Plaintiff, tips towards Clark. We thus conclude after applying a direct method of proof that Kohl's has failed to establish an absence of genuine issues of material fact thereby failing in its attempt to obtain summary judgment in its favor.

Applying the indirect method of proof, our conclusion is the same: Plaintiff has

brought forth enough evidence to withstand summary judgment.  Under McDonnell Douglas, a plaintiff must begin by establishing a *prima facie* case of discrimination.  Thereafter, the burden shifts to the defendant to articulate a nondiscriminatory reason for the actions taken against the plaintiff.  If the defendant succeeds in offering a legitimate, nondiscriminatory reason for the employment decision, the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual. Naik v. Boehringer Ingelheim Pharmaceuticals, Inc., 627 F.3d 596, 599-600 (7th Cir. 2010) (citations omitted).  The traditional *prima facie* case requires a showing by the plaintiff: (1) that she was part of a class of persons protected by Title VII; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that similarly-situated individuals outside her protected class were treated more favorably.  Id. (citing Hildebrandt v. Illinois Dep't of Natural Resources, 347 F.3d 1014, 1030 (7th Cir. 2003)).

     Clark provides sufficient evidence to permit a jury to find that, as (1) an African-American employee; (2) who was improving her performance scores monthly while in her Westfield placement and while she was on a formal written plan; (3) (she) was terminated; and further, (4) that Norrick, a Caucasian colleague comparably-situated to Clark, was not put on a formal written plan nor terminated, even though Norrick's store's performance also languished during the same 2008 timeframe.

15

Kohl's proffers that the Westfield store's performance declined during Clark's tenure as manager, as addressed *supra*.  Clark concedes that she needed to improve her store performance since it was lagging behind others in the region.  Clark Dep. Ex. BB.  Yet, Kohl's has entirely failed to demonstrate that there was any legitimate nondiscriminatory basis for distinguishing between Clark's performance and Norrick's.  Further, there is no indication from evidence presented here by either party that Clark's level of performance fell so far below expectations as to merit termination.

The above-referenced evidence regarding the comparability between Clark's and Norrick's performance and their resultant systematic, disparate treatment by the same district manager frame a case sufficient to support a jury verdict in Clark's favor on her claim by Kohl's in its decision to terminate her employment.  Accordingly, we DENY Defendant's Motion for Summary Judgment as to Count I of her Complaint.

## Conclusion

For the reasons detailed in this entry, we DENY Defendant's Motion for Summary Judgment for Clark's allegedly discriminatory termination based on her race (African-American), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

Because Clark failed to support her claims for discriminatory transfer (Count II)

and retaliatory termination (Count III) under 42 U.S.C. §1981, she is deemed to have waived them. Accordingly, we <u>GRANT</u> Kohl's Motion for Summary Judgment with regard to Counts II and III.

 IT IS SO ORDERED.


Date: 07/28/2011

                *Sarah Evans Barker*
                SARAH EVANS BARKER, JUDGE
                United States District Court
                Southern District of Indiana

Copies to:

**Gregory A. Stowers**
STOWERS & WEDDLE PC
626 N. Illinois Street
Suite 201
Indianapolis, IN 46204
(317) 636-6320
Fax: (317) 685-3900
Email: gstowers@swh-law.com

**Marc Allen William Stearns**
HARRISON & MOBERLY
10 West Market Street
Suite 700
Indianapolis, IN 46204
317-639-4511
Fax: 317-262-3739
Email: mstearns@h-mlaw.com

**Stephen D. LePage**
HARRISON & MOBERLY
10 West Market Street
Suite 700
Indianapolis, IN 46204
(317)639-4511
Fax: (317)639-9565
Email: slepage@h-mlaw.com

**William Norris Ivers**
HARRISON & MOBERLY
10 West Market Street
Suite 700
Indianapolis, IN 46204
(317) 639-4511
Fax: (317) 639-9565
Email: wivers@h-mlaw.com